JAR/MSM: USAO 2025R 00628

FILED ___ ENTERED<br>
___ LOGGED ___ RECEIVED<br>
8:36 am, Nov 20 2025<br>
AT GREENBELT<br>
CLERK, U.S. DISTRICT COURT<br>
DISTRICT OF MARYLAND<br>
BY _____M.G._____ Deputy

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | Case No. 8:25-mj-03027-TJS |
| | * | |
| **Javon Orane Minott,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| ******** | | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, David LaGrossa, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. This affidavit is submitted in support of a criminal complaint. Based on the following facts, I submit that there is probable cause to believe that on November 17, 2025, **Javon Orane MINOTT** committed sexual abuse in violation of 18 U.S.C. § 2242. I respectfully request that the Court issue the criminal complaint and arrest warrant for **MINOTT** under Federal Rule of Criminal Procedure 4(a).

### AGENT BACKGROUND

2. I am a duly appointed federal police officer with the United States Park Police ("USPP") since 2009. I am currently assigned to the USPP Criminal Investigations Branch, Major Crimes Unit. My responsibilities include the investigation of all crimes, including sexual abuse, on properties administered by the National Park Service, an agency of the United States Department of the Interior.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I have not, however, excluded any information known to me that would defeat a determination of probable cause.

### PROBABLE CAUSE

*Victim Found Shirtless, Wearing a Coat, at Beltsville Agricultural Research Center*

4. On Monday, November 17, 2025, at approximately 10:50 a.m., Prince George's County Police Department (PGPD) officers went to the area of Beaver Dam Road at Sheep Road, in Prince George's County, Maryland, for a "911" report of a sexual assault. The call had been placed by Victim-1 ("V1"), who claimed during the call that she had been sexually assaulted minutes before. PGPD officers then found V1 at the location described above, and V1 was wearing a coat but no shirt or bra.

5. V1 told one of the officers at the scene that she had been sexually assaulted by her "Uber" driver. However, V1 otherwise appeared incoherent, and her condition was such that she was not able to make full, coherent sentences. Officers took V1's pulse, which was low, and she appeared to be going in and out of consciousness to a degree that officers believed her condition to be life threatening. Officers called an ambulance, which took V1 to White Oak Medical Center for an evaluation.

6. Additionally, the scene was determined to be located on the Beltsville Agricultural Research Center. PGPD officers contacted United States Park Police (USPP), who went to the scene and took control of the investigation. The Beltsville Agricultural Research Center is in Maryland on lands within the special maritime and territorial jurisdiction of the United States and administered by the United States Department of Agriculture. USPP has a Memorandum of Understanding with the Beltsville Agricultural Research Center to conduct law enforcement within

this location, by virtue of it being property of the United States and its status as an area of exclusive jurisdiction.

*Victim Interviewed at Hospital*

7. At approximately 10:11 p.m. the same day, a USPP detective went to White Oak Medical Center, to check on the condition of V1. V1 appeared more lucid, and it appeared that the effects of the intoxicating substances were subsiding.

8. The detective interviewed V1, who explained that she had ordered an Uber to take her from Columbia, Maryland to Washington, D.C., to buy drugs. She said she purchased what she believed to be heroin. V1 said that she ordered an Uber to then take her from Washington, D.C. to her mother's home in Bowie, Maryland. While waiting for the Uber, V1 used a small amount of the drugs she just purchased. V1 said that an Uber then pulled up and she got into the rear passenger seat.

9. V1 recalls that during this drive from D.C., she was looking at her phone and after some time, looked up and realized that the vehicle was not going the right way and V1 did not know where she was. She asked the driver, "Where we at?" V1 said that the driver kept stating "You're so beautiful," and he asked V1 a couple of time to "take your shirt off." V1 at first did not respond to the advances, but later stated something to the effect, "Please stop saying that." She also asked, "Why aren't you pulling in anywhere to ask for directions?"

10. V1 said the driver then turned off the road and pulled in behind a building where there were bales of hay. V1 stated that she was immediately scared for her life.

11. V1 did not remember how, but she ended up in the front passenger seat. The driver reached over and slid his hand down V1's back and inside of her pants and grabbed her right buttock. Ther driver then wrapped his left arm around V1. V1 stated "Please stop," but the driver

3

DL

remained silent. V1 told the detective that, at this point, "I realized I was going to be raped." V1 was visibly upset, crying, and shaking while describing these details.

12. V1 said that the driver was so strong, and that he applied enormous pressure with both of his arms around her. V1 felt that she could not fight the driver and froze in fear. V1 said she kept her eyes closed and her chin to her chest. V1 told detectives that V1 thinks she urinated in her pants while in the front seat.

13. V1 thought the driver was going to kill her. V1 asked the driver if he was going to kill V1. The driver replied "No," and told V1 to "take off your clothes." V1 said that they ended up in the back seat, but she did not know how they got to the back seat. V1 stated, "I see myself diagonal in car." V1 said that in the back seat, the driver penetrated her vagina digitally and with an erect penis a couple of times.

14. While describing these details, V1 was upset, tearing from her eyes, clinching her teeth tight as if she was in pain, moving her legs and had an accelerated deep breathing pattern similar to hyperventilating.

15. V1 said that the driver went and sat in the front passenger seat with his legs facing out of the car. V1 said the driver's penis was hard. V1 was facing away when the driver forced V1 down onto the driver's penis, vaginally penetrating her. V1 stated, "It hurt so bad." The driver then forced V1 to her knees and forced V1 to perform oral sex. V1 said she thought the driver had already ejaculated inside her vagina because the driver had white stuff all over his penis. V1 stated that during the oral sex, she choked on the driver's penis, and he ejaculated in her mouth. V1 said, "I was pretty sure he was going to kill me," and added "When he raped me it wasn't very long. Just short bursts."

16. V1 said after the rape, V1 stood outside the vehicle to smoke a cigarette to calm

DL

down. She said she smoked Marlboro Reds, and that she threw down the cigarette she had been smoking after a couple drags.

17. V1 said she called her mother and began to read the license plate of the vehicle. V1 said that the driver heard her and threw V1's personal belongings outside of the vehicle and sped off. V1 said she was left behind the building wearing only a black coat and pants.

*Victim, Victim's Mother, and Another Witness Further Interviewed*

18. Later that evening, V1 was transported from White Oak Medical Center to John Hopkins Howard County Medical Center where a Sexual Assault Forensic Exam (SANE) was conducted on V1.

19. Investigators interviewed V1's mother over the phone, who reported that V1 had plans to arrive at V1's mother's house and was in communication with V1 over the phone when V1 stopped communicating. V1's mother stated that she received a phone call from V1 stating that she had been raped by her Uber driver and did not know where she was. V1's mother stated that she told V1 to call 911.

20. Witness #1 (W1), whose identity is known to law enforcement, was interviewed on scene. W1 explained to investigators that he was traveling on Beaver Dam Road when he observed V1, who he reported was stumbling about and went into the middle of the road, forcing them to drive around her to avoid hitting V1. After W1 had passed V1's location, she began to chase after the vehicle and wave them down. W1 observed V1 fall to the ground while chasing the vehicle. When the witness came to a stop, he reported that V1 asked him for help and stated that she had been raped and drugged. W1 stated that V1 was stumbling and could not keep her balance and appeared to be under the influence of drugs. W1 advised that V1 had a black coat on, and her stuff was all over the place.

*Law Enforcement Reviewed Victim's Phone*

21.     While at the hospital with V1, investigators reviewed V1's rideshare application Uber.  Investigators learned from the Uber application that from 8:11 a.m. to 9:08 a.m. on November 17, an Uber trip was completed from V1's residence in Maryland to New York Avenue at Bladensburg Avenue NE, Washington D.C.

22.     A second Uber trip showed a pickup at 9:33 a.m. on November 17, at an address at New York Avenue NE, Washington, D.C.  The Uber driver was listed as a "Javon". The vehicle listed for the vehicle pick up was a Jeep Compass with Maryland tag 7GN4929.  A check of the vehicle registration showed it registered to a Javon **MINOTT**.  The ending location for this Uber trip was listed as V1's mother residence, located at Lottsford Road, Mitchellville, MD, and that the trip ended nearby in Bowie, Maryland, at 9:54 a.m., which was near the Lottsford Road location.

23.     V1's phone shows that at 10:12 a.m., an additional Uber ride order was placed for a separate Uber.  This Uber order appears to have occurred on Interstate 495 while V1 was still inside the vehicle being operated by the **MINOTT**.  This separate Uber driver appears to have accepted the ride and made multiple unsuccessful attempts to call V1.  That Uber ride was then canceled.

*Law Enforcement Returned to Beltsville Agricultural Research Center*

24.     At approximately 2 a.m. on November 18, law enforcement returned to the Beltsville Agricultural Center to search for additional evidence based on the information described above.  Law enforcement found freshly disturbed gravel, which appears to have been created by a vehicle accelerating quickly.

25.     Law enforcement also found a partially burnt cigarette consistent with the brand

*DL*

"Marlboro Reds."

*Law Enforcement Identified Victim's Ride Share Driver*

26. On November 17, investigators responded to the area of New York Avenue NE, Washington D.C., the original Uber pick up location, and obtained CCTV footage showing that at approximately 9:33 a.m., the same as the Uber ride pick up time, a female consistent in appearance to V1 enter the rear passenger side of a blue Toyota Corolla with Maryland registration 54730CM. The vehicle then exits the parking lot.

27. Investigators responded to the address listed for the registered owner of the Toyota Corolla and spoke with the registered owner of the Toyota, Witness 3 (W3). W3 informed investigators that he rents the Toyota out through the application "Turo". W3 informed investigators that he rented the Toyota to a "Javon Minott".

28. With the "Turo" application, W3 could track the vehicle's current location as well as see historical travel details for the vehicle. W3 showed investigators the Toyota's whereabouts for that day, which showed the Toyota drive from the location where V1's Uber trip ended in Bowie, Maryland, and continued onto Interstate 495 to the location of the crime scene. The Toyota was idle for 21 minutes at 10:23 a.m. in the area of the reported assault.

29. A review of V1's phone showed that at 10:44 a.m., approximately 21 minutes after the Toyota began to idle, V1 called her mother, at which time she reported the sexual assault.

30. On November 17, 2025, at approximately 7:25 p.m., the Toyota was observed by Maryland Park Police being operated in the area of Addison Road South in Prince George's County, Maryland.

*Driver Claimed Consensual Sex In Between Victim Nodding Off From Drugs*

31. A traffic stop was conducted on the vehicle in the area of 1884 Addison Road South.

The driver of the vehicle was identified as **MINOTT**. **MINOTT** was detained and transported by USPP.

32. While being transported by USPP, **MINOTT** was read and waived his Miranda rights, and he agreed to speak with investigators. **MINOTT** advised that he was an Uber driver and picked V1 up in the area of New York Avenue and Bladensburg Avenue in Washington, D.C., and he took V1 to the drop off location in Bowie, Maryland.

33. Once at the drop-off location, **MINOTT** stated that V1 requested an additional ride. This ride was not booked through the "Uber" application, or any other ride share application.

34. During the interview, **MINOTT** acknowledged that he had driven to the location where V1 was found by law enforcement.

35. **MINOTT** claimed the two engaged in consensual sex at this location. **MINOTT** also said that he observed V1 use drugs inside the vehicle prior to the two engaging in sex. **MINOTT** advised that he penetrated V1's vagina with his penis, that he also penetrated V1's vagina with his fingers, and that V1 performed oral sex on him.

36. When initially asked whether V1 seemed intoxicated, **MINOTT** responded . . . "honestly, if she was intoxicated, I wouldn't know. . . she wasn't acting like she was on anything until after she did it [took dope]."

37. When the interview continued at the USPP station, **MINOTT** further explained that after the two had sex the first time they were sitting in the car and V1 would begin to nod off. **MINOTT** explained that he would talk to V1, and she would snap out of it. **MINOTT** said that V1 then smoked a cigarette and initiated sex again.

38. **MINOTT** acknowledged after arriving at the USPP station that he thought V1 was high. **MINOTT** stated that between periods of sex V1 was nodding off, but he stated during sex

DL

V1 was not nodding off.

39.   **MINOTT** advised that when V1 was outside the vehicle, he heard her speaking to her mother on the phone. **MINOTT** stated that V1 told her mother that she was with a guy and she was scared. At that time, **MINOTT** stated that he removed V1's belongings from the vehicle and drove away leaving V1 behind.

## CONCLUSION

40.   Based on the facts described in this affidavit, I submit there is probable cause to believe that on or about November 17, 2025, **MINOTT** committed the following violation of federal law: sexual abuse, in violation of 18 U.S.C. § 2242. Accordingly, I request that the Court issue a criminal complaint and arrest warrant for **MINOTT**.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

*David LaGrossa*
Detective David LaGrossa
U.S. Park Police

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) this __19th__ day of November 2025.

_____
Honorable Timothy J. Sullivan
Chief United States Magistrate Judge

9